UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHLYN STEIN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Civil Action No. 18-30201-MGM |
| ANDREW MCMAHON, Acting Director, VA | * | |
| Central Western MA Health Care System, in his | * | |
| official capacity, and JOHN COLLINS, Retired | * | |
| Director, VA Central Western MA Health Care | * | |
| System, in his individual capacity, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 22)

February 12, 2020

MASTROIANNI, U.S.D.J.

I.     INTRODUCTION

Plaintiff, Kathlyn Stein, filed this action on December 27, 2018, alleging that she was paid

substantially less than two men though she performed a job that required "equal skill, effort, and

responsibility" to the jobs held by the two men in violation of the Equal Pay Act ("EPA") and the

Massachusetts Act to Establish Pay Equity ("MEPA"). She has brought claims against Defendants

John Collins, former Director of the VA Central Western MA Health Care System ("VA CWM"), in

his individual capacity, and Andrew McMahon, Acting Director of VA CWM, in his official

capacity.[1] Defendants responded to Plaintiff's complaint by filing a Motion to Dismiss, arguing

---

[1] Footnote 1 in the Reply to the opposition to the Motion to Dismiss notified this court of the retirement of John
Collins and the appointment of Andrew McMahon as the Acting Director of the VA Central Western MA Health Care

dismissal is required because pursuant to (1) Fed. R. Civ. P. 12(b)(1) this court lacks subject matter jurisdiction, and (2) Fed. R. Civ. P. 12(b)(6) Plaintiff has failed to state a claim on which relief can be granted. For the reasons discussed below, this court finds it lacks subject matter jurisdiction with respect to Plaintiff's official capacity claims and, therefore, lacks "power to hear and determine" those claims. *Lawless v. Steward Health Care System, LLC*, 894 F.3d 9, 16 (1st Cir. 2018).

As to Plaintiff's individual capacity claims, the court finds that even if individual claims against a government employee are permissible under the EPA – a question not yet decided by the First Circuit – Plaintiff has failed to plead sufficient facts to state such a claim. The court, therefore dismisses Plaintiff's individual capacity EPA claim without prejudice. Finally, the court also dismisses Plaintiff's individual capacity MEPA claim with prejudice because the supremacy clause makes MEPA inapplicable to the VA and, by extension, Plaintiff, even in his individual capacity.

## II.  Special Considerations Applicable to Complaints Filed By Pro Se Plaintiffs

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties pro se plaintiffs face, the courts construe pro se complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure

---

System. (Dkt. No. 23, n. 1.) Pursuant to Fed. R. Civ. P. 25(d), the court automatically substitutes Acting Director McMahon as the defendant with respect to Plaintiff's official capacity claims.

every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

### III.   MOTION TO DISMISS STANDARD

At this stage in the litigation, the court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences favorable to Plaintiff based on those factual allegations. *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are not required to accept as true allegations in a complaint that are legal conclusions, including bald assertions that statutory requirements have been met or a statute has been violated. *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," reaching its own legal conclusions. *Id.* at 679. In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012).

Federal courts have limited jurisdiction and the party choosing to litigate in federal court bears the burden of demonstrating the court has subject matter jurisdiction. Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may file a motion to dismiss challenging the court's subject matter

jurisdiction. Unless a defendant contradicts the jurisdictional facts alleged by the plaintiff, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefore in the plaintiffs' favor." *Fothergill v. United States,* 566 F.3d 248, 251 (1st Cir. 2009); *see also Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 n. 8 (1st Cir. 2007). The court must dismiss the action "[i]f the well-pleaded facts, evaluated in that generous manner, do not support a finding of federal subject-matter jurisdiction." *Fothergill,* 566 F.3d at 251.

## IV.   DISCUSSION

Plaintiff asserted federal and state claims against Director Collins in both his individual and official capacity. Following his retirement, the individual capacity claims remain pending against him while Acting Director Andrew McMahon has been automatically substituted as the defendant with respect to the official capacity claims. "[A] public official, sued only in his official capacity, is a proxy for the government entity that employs him and is in privity with that entity," while an individual capacity "suit takes aim at the individual, not the government entity with which he is [or was] associated." *Goldstein v. Galvin,* 719 F.3d 16, 23 (1st Cir. 2013). Defendants have argued both claims should be dismissed, though for different reasons. The court addresses the two sets of claims separately, beginning with the government's argument that this court lacks subject matter jurisdiction to hear the official capacity claims pursuant to Fed. R. Civ. P. 12(b)(1).

### A.   Official Capacity Claims and Subject Matter Jurisdiction

Rule 12(b)(1) "is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including, for example, challenges "grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction." *Valentin*

*v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). Claims made under federal law against a federal employee in their official capacity are considered claims against the United States, and subject to sovereign immunity limitations on subject matter jurisdiction. *Tapia-Tapia v. Potter*, 322 F.3d 742, 745-46 (1st Cir. 2003). "Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" *United States v. Bormes*, 568 U.S. 6, 9-10 (2012) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)). In addition to a clear waiver of sovereign immunity, actions for money damages against the United States must be brought in the proper court. Defendants assert this court lacks subject matter jurisdiction over the claims against Acting Director McMahon in his official capacity because, though the EPA includes a waiver of sovereign immunity that allows suits for damages against the United States, the statute does not confer the power to hear such cases upon district courts.

The EPA is codified within the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 206(d). While "Congress unmistakably provided for judicial imposition of monetary liability on the United States for FLSA violations," Congress did not specify a forum for such actions, meaning this court does not derive subject matter jurisdiction to hear claims against the federal government for violation of the FLSA directly from that statute. *Abbey v. United States*, 745 F.3d 1363, 1370 (1st Cir. 2014). The FLSA provides only that "'[a]n action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction,'" without identifying particular courts. *Id.* (quoting 29 U.S.C. § 216(b)). The "fairest reading" of this language "is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA," specifically the Tucker Act. *Id.* 1369-70. ("As the courts have held at the government's urging for three decades, since soon after the FLSA was extended to the federal government . . . the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA.").

The Tucker Act and its companion, the Little Tucker Act, establish the proper forum for money-damages suits against the federal government where a forum has not otherwise been designated. *Id.*; *see also Charles v. Rice*, 28 F.3d 1312, 1321 (1st Cir. 1994). Both grant the Court of Federal Claims jurisdiction over claims against the federal government brought pursuant to other substantive statutes. 28 U.S.C. §§ 1346(a)(2), 1491(a); *Rice*, 28 F.3d at 1321. Additionally, the Little Tucker Act gives concurrent jurisdiction to district courts of those cases in which plaintiffs are seeking no more than $10,000 in damages. 28 U.S.C. § 1491(a); *Rice*, 28 F.3d at 1321. As Plaintiff seeks more than $10,000 in damages, the Tucker Act grants the Court of Federal Claims, rather than this court, jurisdiction to decide Plaintiff's official capacity claims.

Relying on *Tallacus v. United States*, Plaintiff argues that this court does have jurisdiction over her official capacity claims because the FLSA is a "precisely drawn, detailed statute" that operates independently of the Tucker Act to establish the district courts as appropriate forums for FLSA actions seeking money damages from the federal government. 113 Fed. Cl. 149, 153 (2013). However, *Tallacus* was decided by the Court of Federal Claims, not the First Circuit. The decision is, therefore, not binding on this court; nor can this court follow the analysis in *Tallacus* to the extent it conflicts with First Circuit case law. In *Tallacus*, the Court of Federal Claims concluded that, after the Supreme Court's decision in *Bormes*, the FLSA does provide the type of "precise remedial scheme" that displaces the Tucker Act. *Tallacus*, 113 Fed. Cl. at 154-56. In *Abbey* the First Circuit, also considered the effect of *Bormes* on the FLSA and reached the contrary result, ruling that the Tucker Act does provide jurisdiction for monetary-damages claims under the FLSA asserted against the government. This court must follow the First Circuit and, therefore, concludes it lacks subject matter jurisdiction to hear the official capacity EPA claim asserted by Plaintiff.

The court turns next to Plaintiff's MEPA claim. Simply put, as with sovereign immunity under federal law, the supremacy clause prevents the federal government from being subject to any

6

state law unless it unequivocally consents to be so. *See, e.g., State of Me. v. Dep't of Navy*, 973 F.2d 1007

(1st Cir. 1992) (deciding "whether the federal government has waived its sovereign immunity from

[monetary penalties] . . . imposed upon federal facilities under a state . . . law"). As Plaintiff has not,

and indeed cannot, point to any source making MEPA applicable to federal employees, sovereign

immunity bars her official capacity MEPA claim. Plaintiff suggests there is language in the FLSA

that causes state law to apply to the government as an employer, but the language she identified in

29 U.S.C. § 218(a), "[n]o provision of this chapter or of any order thereunder shall excuse

noncompliance with any Federal or State law," is a saving clause, establishing that the federal law

will not preempt state law. *Capron v. Office of Attorney Gen. of Mass.*, 944 F.3d 9, 18 (1st Cir. 2019).


   B.   Individual Capacity Claims and Failure to State a Claim

   Plaintiff has also asserted claims for violations of the EPA and MEPA against former

Director Collins in his individual capacity. Defendants seek dismissal of both claims. As an initial

matter, the court finds dismissal is appropriate with respect to the MEPA claim because, as

discussed above, Plaintiff, as a federal employee, was not subject to the protections of MEPA

pursuant to the Supremacy Clause. With respect to Plaintiff's individual capacity EPA claim,

Defendants seek dismissal for failure to state a claim, asserting Plaintiff has not pleaded sufficient

facts about the conduct of former Director Collins to state a plausible claim against him in his

individual capacity. In her complaint, Plaintiff alleges only three facts related to former Director

Collins: (1) he was the Director of VA Central Western Massachusetts Health Care System ("VA

CWM") at the time the complaint was filed; (2) he directed the work of employees of the VA CWM;

and (3) he had final authority over determining the wages paid to employees of the VA CWM.

(Compl. Dkt. No. 1, ¶ 7.)

The First Circuit has not considered whether personal liability attaches to violations of the EPA, nor has the First Circuit had occasion to consider when supervisors employed by the government may find themselves personally liable for violations of the FLSA. As a general rule, "FLSA liability attaches to any 'employer,' which is defined broadly to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 47 (1st Cir. 2013) (quoting 29 U.S.C. § 203(d)). Under this definition, an employee may be considered to have multiple employers, each of whom is responsible for complying with the FLSA. *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). With respect to individual liability, "[c]ourts have generally agreed that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable . . . for unpaid wages.'" *Manning*, 725 F.3d at 47 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Though the broad definition of employer "[t]aken literally . . . would make any supervisory employee . . . personally liable for the unpaid or deficient wages of other employees," the First Circuit has long held that such a result is untenable and required that an additional "economic reality" test be satisfied before finding a corporate officer or employee individually liable for FLSA violations with respect to a corporate employee. *Agnew*, 712 F.2d at 1513-14; *see also Baystate*, 163 F.3d at 677-79 (1st Cir. 1998) (citing *Agnew* and explaining the economic reality test); *Manning*, 725 F.3d at 47-50 (citing *Agnew* and *Baystate* and using the economic reality test to determine individual liability for FLSA violations). The economic reality test is used to determine "the role played by the [individual] in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits" and prevent the untenable attachment of personal liability to any supervisory or managerial employee of a corporation. *Baystate*, 163 F.3d at 678-79.

In *Manning*, the First Circuit considered whether a plaintiff had alleged sufficient facts to support individual liability claims against two senior employees of the corporation that had employed the plaintiff. As is the case for all supervisory employees working for the government, neither of the two supervisory employees in *Manning* had ownership interests in the entity that employed the plaintiff. *Id.* at 48-50. The First Circuit determined the lack of ownership did not bar individual capacity claims and went on to find that individual liability claims could continue as to the corporation's former president and CEO, but not as to the former senior human resources director. As to the former president and CEO, the First Circuit found that allegations the individual (1) had made decisions about the policies adopted and implemented by the corporation and (2) dominated operations of the corporation including overseeing a major merger, the corporation's budget and setting company-wide policy were sufficient to show that the individual had "'operational control over significant aspects of the business.'" *Id.* at 49 (quoting *Baystate*, 163 F.3d at 678.) The First Circuit described the factual allegations related to the former president and CEO as "denominat[ing] concrete actions that had measurable and immediate impacts on [the corporation's] workforce" thereby raising "a plausible inference not only that compensation-related matters were well within [their] bailiwick, but also, and most importantly, that [they] 'control[led the] corporation's financial affairs and . . . cause[d] the corporation to compensate (or not to compensate) employees in accordance with the FLSA.'" *Id.* In contrast, the First Circuit ruled that the allegations against the former senior human resources ("HR") director were insufficient to support personal liability for FLSA violations. Distinguishing between the two individuals, the First Circuit noted that the allegations against the former HR director were "nothing more than unadorned assertions that are not supplemented by specific allegations supporting the inference that [they] controlled [the corporation's] purse-strings or made decisions about the allocation of financial resources." *Id.* at 50.

Turning back to this case, the court finds that the job title held by Collins and the formulaic description of him having directed the work of VA CWM employees and being the final authority with respect to pay are the type of "unadorned assertions" the court found to be insufficient in *Manning*. While the title itself suggests a level of seniority, that suggestion does not provide a sufficient basis for inferring the level of involvement and control that was pleaded with specificity with respect to the former president/CEO in *Manning*. This is especially true given the bureaucracy that often exists within the federal government, limiting the ability of any single player to make unilateral decisions about compensation.

V.     CONCLUSION

For the reasons discussed above, the court rules on Defendants' Motion to Dismiss (Dkt. No. 22) as follows. The court dismisses with prejudice Plaintiff's MEPA claims and dismisses without prejudice Plaintiff's EPA claim asserted against former Director John Collins in his personal capacity. As to Plaintiff's remaining claim – the EPA claim against Acting Director Andrew McMahon in his official capacity – the court lacks subject matter jurisdiction and must either dismiss the claim or transfer it to the Court of Federal Claims. Should she desire transfer, Plaintiff has thirty days from the date of this order to move for transfer. In the absence of such a motion, the court will dismiss the remaining claim and this case will be closed.

It is so Ordered.

 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

10